# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

ANGELA I. TERRY                                                                    PLAINTIFF

v.                                          NO. 4:18CV00118 JLH

G4S SECURE SOLUTIONS (USA) INC.                                                    DEFENDANT

## OPINION AND ORDER

Angela Terry has worked for G4S Secure Solutions (USA), Inc., as a private security officer since 2013. She was removed from a permanent post at a G4S client's business in early 2018 after the client requested her removal for a disciplinary reason. She then brought this action without the help of a lawyer, asserting several claims against G4S employees and G4S itself. After the Court dismissed some of those claims, remaining are Terry's claims for sex discrimination, retaliation, and defamation, all running against G4S. *See* Documents #18 and #28. G4S now moves for summary judgment. For the reasons that will be explained, the motion is mostly granted and partly denied.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct.

2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id*.

Terry has provided security to G4S clients at various locations. In early 2017, she began a permanent G4S security post at Manheim, a car auction company in Little Rock. G4S clients such as Manheim can request the removal of a security guard from the post at the client's site. In December 2017, Manheim's Security Manager received information that Terry had been rude and unhelpful to a transport driver at Manheim and then left her guard post uncovered. The Security Manager called the transport driver. He confirmed what had occurred. He then requested that Terry be removed, and G4S removed her from the Manheim post.

G4S placed Terry on two days of administrative leave pending an investigation. Based on this investigation G4S concluded that Terry had not left her post, but it determined that she had been rude and unhelpful to the driver during the interaction. She was informed she would not be returning to the Manheim post. G4S next offered Terry a special events position. She accepted. Unlike her post at Manheim, however, the special events position does not provide a stable income because special events occur unpredictably. To this date G4S has not offered Terry another permanent position.

Terry contends that G4S removed her from the Manheim post because of her sex in violation of Title VII. She also alleges that G4S removed her in retaliation for complaining about sex

2

discrimination, and furthermore that G4S has refused to consider her for a permanent full-time position in retaliation for filing an EEOC charge and this lawsuit. Finally, Terry asserts a defamation claim under Arkansas law based on a G4S employee allegedly publicly accusing her of stealing, which was false.

Title VII prohibits discrimination because of sex. 42 U.S.C. § 2000e-2(a)(1). Discrimination "because of" sex occurs when sex is "a motivating factor for any employment practice." *Id.* § 2000e-2(m). Absent direct evidence of discrimination, a plaintiff may survive summary judgment with evidence creating an inference of unlawful discrimination through the *McDonnell Douglas* burden-shifting framework. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (en banc) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct 1817, 36 L. Ed. 2d 668 (1973)).

Under the *McDonnell Douglas* framework a plaintiff must first establish a prima facie case of discrimination. That is, she must put forth evidence that she was a member of a protected group, she was qualified to perform the job, she suffered an adverse employment action, and the circumstances permit an inference of discrimination. *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 990 (8th Cir. 2011). If the plaintiff establishes a prima facie case the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the challenged action. *Id.* Finally, if the employer meets that burden, the plaintiff must demonstrate that the proffered reason was a pretext and that unlawful discrimination was a motivating factor in the adverse employment action. *Id.*; *Torgerson*, 643 F.3d at 1046.

Terry bases her sex discrimination claim on the fact that one of her male supervisors at G4S, Tracy Parker, had previously made sexist comments to her. Parker was the Manheim site supervisor.

3

As site supervisor his duties included overseeing monthly training, making the daily schedule, and handling minor disciplinary issues. Document #36-3 at 2.

In her deposition Terry testified to the following facts. In April 2017, after Parker had a disagreement with his sister, he made comments like, "[w]omen disgust him," women "are hard to deal with," and he is "glad he only dates men." Document #36-1 at 3-4. Terry took offense to these comments. *Id.* at 4. In September 2017 Terry informed G4S's human resources manager about these comments and also told her that she felt Parker "was partial to the male guards." *Id.* G4S disputes that Terry mentioned Parker's comments about women or alleged any sex discrimination in this September meeting, *see* Document #36-2 at 3, but at this stage the Court takes Terry's version of the disputed facts as true.

Terry further testified in deposition that Parker was "excited and happy, [and] in good spirits" when he was "around the guys," but his demeanor was different around her. Document #36-1 at 4-5. Parker commented to Terry in November 2017 that the "male guards" were "doing such a good job." *Id.* at 5. He told her that she was not scanning correctly when she made her security rounds, and before G4S lost its contract with Manheim, he would "get rid of the problem guard." *Id.* All these instances are why Terry felt Parker "has a problem with [her] because of [her] gender." *Id.*

The record reveals that in late December 2017 Terry had an incident with a Manheim driver. As site supervisor Parker handled minor disciplinary issues. Document #36-3 at 2. Parker emailed Manheim's Security Manager, Cory Knapp, several days after the incident. Document #36-1 at 54. He informed Knapp that the transport driver reported that Terry had been "very rude and disrespectful to him[,] . . . rudely instructed him to leave without trying to assist him," and then left

4

her guard post uncovered. *Id.* The driver left his contact information with Parker and requested to speak to someone about the incident. *Id.* Knapp, Manheim's Security Manager, then called the transport driver "and confirmed what had occurred." *Id.* He asked G4S to remove Terry from her post at Manheim because this behavior was "unacceptable." *Id.* This request prompted G4S's Branch Manager, Steven Willis, to remove Terry from her Manheim post and to offer her the special events position. *Id.* at 29-30; Document #36-2 at 3; Document #36-3 at 3.

Even if the jury believed these facts and made all reasonable inferences in Terry's favor, G4S is entitled to summary judgment on her sex discrimination claim.

Terry lacks direct evidence, or "strong . . . evidence that illegal discrimination motivated the employer's adverse action." *Torgerson*, 643 F.3d at 1044. It is true that months before Terry's removal Parker had made some negative comments about females in general and some positive comments about males. But Parker was not a decisionmaker in Terry's removal from her post, and stray remarks by a nondecisionmaker are not direct evidence. *See id.*

Even if Parker's email to Knapp was intended to cause Terry's removal, there is no evidence that sending the email was "motivated by a discriminatory bias." *See id.* ("if a non-decisionmaker performs an act motivated by a discriminatory bias that is intended to cause, and that does proximately cause, an adverse employment action, then the employer has cat's paw liability") (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 422, 131 S. Ct. 1186, 1194, 179 L. Ed. 2d 144 (2011)). This is because Terry has not connected Parker's email to Knapp with any discriminatory bias. The parties agree that a conversation occurred between Terry and the transport driver at issue on the date at issue.[1] Parker's email reflects communication to Manheim regarding this incident, including the

---

[1] Terry does not admit she was rude to the driver.

driver's own account of it. Knapp called the driver and independently confirmed what had occurred before he made the decision to request Terry's removal. If Parker did harbor some discriminatory bias toward Terry, the record contains no evidence that that bias motivated his email relating a driver's complaint to Knapp.

To the extent that Parker allegedly previously said in November he would "get rid of the problem guard," nothing in the record shows the comment was related to Terry's sex. Document #36-1 at 5. Terry testified that Parker made the comment in the context of his belief that she was not scanning in correctly when she made her security rounds. *Id.*

Turning next to the *McDonnell Douglas* framework: Terry meets the first and third elements of a prima facie case because she is female and because she was transferred from a permanent post to an as-needed post involving a reduction in pay. *See Williams v. Tucker*, 857 F.3d 765, 769 (8th Cir. 2017).

G4S argues that Terry was not qualified for a security guard position because she was not courteous and professional. This argument is belied by the undisputed fact that G4S requested Terry stay on as a G4S security guard for special events. Drawing reasonable inferences from these facts in Terry's favor, a jury could find that she remained qualified for a security guard position with G4S even after the incident with the Manheim driver.

The inquiry thus centers on whether the record contains sufficient evidence to lead to an inference of discrimination based on Terry's sex. As explained above, nothing shows that Parker's alleged discriminatory bias motivated Terry's removal from her post. Rather, G4S followed Knapp's directive to remove Terry after Knapp independently confirmed the account in Parker's email. And Willis, G4S's branch manager, believed the claims that Terry was rude and unhelpful based on his

6

conversation with Terry after the incident, his previous interactions with her, and his awareness that multiple previous clients had requested her removal from job sites. *See McCullough v. Univ. of. Ark. for Med. Scis.*, 559 F.3d 855, 861-62 (8th Cir. 2009) ("The critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge.").

Nor has Terry shown that she was treated differently than similarly situated males, which would give rise to an inference of discrimination. *Wilkie v. HHS*, 638 F.3d 944, 954-55 (8th Cir. 2011). Even if the male G4S guards at Manheim were similarly situated — that is, that they dealt with the same supervisor, were held to the same standards, *and* engaged in the same conduct for which Terry was removed — there were only two male guards. *Holmes v. Trinity Health*, 729 F.3d 817, 823 (8th Cir. 2013); *Tyler*, 628 F.3d at 990 (explaining that statistical evidence from a small sample size, such as six or ten individuals, does not support an inference of discriminatory intent). Moreover, one of the two male guards was treated the same as Terry, as he was removed from his post at Manheim while Terry still worked there. Document #36-1 at 25. This evidence would not allow a reasonable jury to find an inference of sex discrimination. Terry thus has not put forth sufficient evidence to establish a prima facie case.

Even if Terry had made a prima facie case, she has not shown that G4S's proffered legitimate nondiscriminatory reason was pretextual. *See Bearden v. Int'l Paper Co.*, 529 F.3d 828, 832-33 (8th Cir. 2008). G4S says it removed Terry because Knapp requested it, after he independently verified the transport driver's account of what happened. The parties agree that Manheim could request such a removal. And Terry has put forth no evidence tending to contradict that Willis honestly believed

7

the allegations against Terry. *See McCullough*, 559 F.3d at 862. For the above reasons, summary judgment is granted on Terry's sex discrimination claim.

Title VII retaliation claims are analyzed with the same direct or burden-shifting analysis as discrimination claims. *Oehmke v. Medtronic*, 844 F.3d 748, 758 (8th Cir. 2016); *Cheshwalla v. Rand & Son Const. Co.*, 415 F.3d 847, 851-52 (8th Cir. 2005). Absent direct evidence a plaintiff must show she engaged in statutorily protected activity, she suffered an adverse employment action, and a causal connection exists between the two. *Cheshwalla*, 415 F.3d at 851. Unlike discrimination claims, however, retaliation claims require but-for causation. That is, a plaintiff must put forth evidence that the adverse employment action would not have occurred in the absence of the plaintiff's protected activity. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013).

Terry's claim that G4S removed her from her Manheim position in retaliation for complaining about sex discrimination fails. G4S rightly points out that the record contains no evidence that Terry's removal from the Manheim post was caused by any protected activity. She filed an EEOC charge and this lawsuit *after* she was removed, and so those protected activities could not have caused her previous removal. Taking as true that Terry spoke to the human resources manager in September about sexist comments by Parker, there is no evidence that the human resources manager reported Terry's allegations to any decisionmakers. Even if she had, a jury could not find Terry's removal more than three months later would not have occurred absent that conversation. *Cheshewalla*, 415 F.3d at 852 (timing alone rarely enough).

8

Assuming, without deciding, that a December letter from Terry's lawyer to G4S was a protected activity under Title VII,[2] the intervening incident between Terry and the Manheim driver erodes any causal connection between the letter and her removal. *Lenzen v. Workers Compensation Reinsurance Ass'n*, 705 F.3d 816, 821-22 (8th Cir. 2013); *Helton v. Southland Racing Corp.*, 600 F.3d 954, 960-61 (8th Cir. 2010) (finding that because employee did not mention race during phone call in which she complained about a fellow employee, the call was not a statutorily protected activity). Finally, like her discrimination claim, even if Terry had made a prima facie case, she has not shown that G4S's legitimate nondiscriminatory reason for her removal was pretextual.

However, Terry's other retaliation claim, based on G4S's refusal to consider her for a permanent full-time position in retaliation for filing an EEOC charge and this lawsuit, goes forward.

This claim alleges that when Terry was removed from the Manheim post, G4S told her that it had no unarmed post available at the time, but as soon as one became available G4S would first offer her the position. She alleges that G4S has had unarmed posts available and that the company purposely has not considered her for a permanent post in retaliation. Further, Terry says she has reached out to the company about online job postings, all to no avail. *See* Document #19 at 3. She has produced evidence confirming all this — screen shots from job websites showing G4S had openings for an unarmed guard, and screen shots of text messages with a G4S supervisor in which she told him she had seen unarmed G4S posts online, asked why she had not gotten calls about them, and asked for work. *See* Document #19 at 6-11; Document #43 at 21-22. After six months of waiting for G4S to provide her with a stable post, she finally took another job. Document #43 at 11.

---

[2] This letter reports harassment by Parker after Terry complained that he allegedly falsely accused her of stealing, but it does not mention harassment or discrimination based on sex. Document #2 at 6.

9

G4S's sole argument for summary judgment on this claim is that Terry "admitted that she has never applied for any open positions at G4S since her removal." Document #37 at 22; Document #36-1 at 11. It is true that a failure to apply for an officially posted job opening will often preclude a plaintiff's claim that the defendant failed to hire her. *See Lockridge v. Bd. of Trs., Univ. of Ark.*, 315 F.3d 1005, 1011 (8th Cir. 2003) (en banc). But the Eighth Circuit has indicated that a failure to apply may sometimes be excused. For example, a plaintiff who made every reasonable attempt to convey her interest in the job to the employer may be able to prevail on a failure to hire claim. *Id. See also Dotson v. Delta Consol. Indus., Inc.*, 251 F.3d 780, 781 (8th Cir. 2001) ("[N]o reasonable fact finder could conclude that he ever submitted an application to Delta for the group leader's position, or ever indicated to anyone in Delta's management that he wanted the job.").

A failure to apply may be excused if the employer had "some reason or duty to consider him for the post." *Green v. City of St. Louis, Missouri*, 507 F.3d 662, 667 (8th Cir. 2007) (quoting *Kehoe v. Anheuser-Busch, Inc.*, 96 F.3d 1095, 1105 n.3 (8th Cir. 1996)). In *Green*, the Eighth Circuit held summary judgment was warranted because the plaintiff had not established any jobs were open for which he was qualified and which the employer had reason to believe he would be interested in. *Id.*

Here, to the contrary, a jury could conclude based on Terry's submitted evidence that G4S jobs were open for which she was qualified and which G4S had reason to believe she would be interested in. Given that G4S has not put forth any argument attacking the other elements of this retaliation claim, its motion for summary judgment on this claim must be denied. *See Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2553.

Finally, Terry asserts a defamation claim under Arkansas law based on a G4S employee allegedly publicly accusing her of stealing, which was false. In Arkansas, the elements of a

10

defamation claim for a private individual are that (1) the defendant published a false statement of fact concerning the plaintiff, (2) the statement of fact was defamatory, (3) the defendant acted with negligence in failing to determine the truth of the statement prior to its publication, and (4) the publication of the statement was a proximate cause of the plaintiff's damages. *Walmart Stores, Inc. v. Lee*, 348 Ark. 707, 731, 74 S.W.3d 631, 651 (2002). The false statement must be published, i.e., it must have been communicated to someone other than the plaintiff. *Id.* It must have caused actual harm to the plaintiff's reputation. *Id.*; *Boellner v. Clinical Study Centers, LLC*, 2011 Ark. 83, 18, 378 S.W.3d 745, 757 ("A plaintiff must prove that the defamatory statements have been communicated to others and that the statements have affected those relations detrimentally.").

Terry's defamation claim is based on an email that Parker wrote to James Medlin, a G4S supervisor, in August 2017. Document #36-1 at 35. In that email, Parker wrote that the week before, when he arrived to work one morning, Terry told him someone had spilled fuel in the bay. *Id.* at 56. He confirmed fuel was on the floor. *Id.* Further, he stated in the email,

> if the fuel had been spilled during the time that Manheim employees were still at work or even on the shift that was before hers it would have evaporated before I got to work at 0600. The fuel was still wet and had not yet evaporated so the smell was still fresh. This is the same person that on almost every shift the fuel consumption in the security vehicle seems to go up dramatically. Sherry says that there has been someone bothering the things at her desk. So I'm going to be aware of the times and days that Sherry's is in disarray from this point on. . . . I hate to be the bearer of bad news but more than that I can't tolerate dishonesty.

*Id.* Terry came across this email when she saw it left up on a computer screen when she came in for a shift, and then found it printed out in a security officer report folder. Document #36-1 at 3.

A jury could infer that Parker's email insinuated that Terry was using excess fuel inappropriately. However, there is no evidence the email was published or that it caused actual harm to Terry's reputation. Terry opined in her deposition that "Tracy [Parker] left this email up . . .

11

because if he printed these emails off and left them in the security desk, he left them there with the intent of somebody seeing them to defame my character." *Id.* She believes Parker left the emails up, but admitted, however, that she does not have any proof to support her belief. *Id.* at 33-34. There is thus no evidence that Parker communicated the contents of this email to anyone other than the recipient of the email, a G4S supervisor. *See Roeben v. BG Excelsior Ltd. P'ship*, 2009 Ark. App. 646, 344 S.W.3d 93 (noting that a company cannot publish a statement to itself). Nor is there evidence that the email caused damages to Terry. She was not disciplined, her hours did not change, her pay was not affected; indeed, "[e]verything was still the same." Document #36-1 at 35-36. In fact, G4S's human resources manager told Terry that Parker had been wrong and should apologize to her. *Id.* Nothing in the record shows that the email harmed Terry's reputation whatsoever. *Walmart Stores, Inc.*, 348 Ark. at 731, 74 S.W.3d at 651; *Boellner*, 2011 Ark. 83 at 18, 378 S.W.3d at 757. G4S is therefore entitled to summary judgment on Terry's defamation claim.

For all the foregoing reasons, G4S's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Document #36. Summary judgment is granted in favor of G4S on Terry's claims for sex discrimination, retaliation based on her removal from Manheim, and defamation. Summary judgment is denied on Terry's claim based on G4S's failure to hire her for a permanent post in retaliation for filing an EEOC charge and this lawsuit. Only this claim goes forward.

IT IS SO ORDERED this 13th day of February, 2019.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE